## Richmond.

### GRAHAM V. LARMER ET ALS.

December 11th, 1890.

VENDOR AND VENDEE—*Sale in gross*—*Deficiency*—*Case at bar.*—Vendee purchased, for the sum of $6,000, a tract of land described in the contract of sale by metes and bounds, and as containing 274 acres, more òr less, the vendor making no representations as to the number of acres. There was a deficiency of twenty-eight acres, and vendee made partial payments after becoming aware of the deficiency: *held*, it was a sale in gross, and vendee is entitled to no abatement of purchase-money on account of the deficiency.

Argued at Wytheville.   Decided at Richmond.

Appeal from so much of the decree of circuit court of Washington county, rendered in vacation, on the 26th of July, 1888, as dissolved the injunction theretofore awarded, on the terms specified in the decree, in the cause therein pending, wherein James H. Graham was complainant and Emmet B. Larmer and others were defendants. The complainant in his bill claimed relief on several grounds, and among them he claimed to be entitled to an abatement of the purchase price of a tract of land bought by him from the defendant, Larmer, being the same land conveyed to the latter by his father, John Larmer, and described in the title bond and deed from Larmer to Graham by metes and bounds, and as "containing about 274 acres, be the same more or less." Graham alleged in his bill that, before and at the time of the sale, Larmer represented to him that the tract contained every foot of the

quantity called for, and that by reason of said representation he was influenced and deceived as to the quantity in the tract, and agreed to give Larmer $6,000 therefor. The bill after alleging what transpired at the time of sale, then propounds to Larmer numerous special interrogatories, and calls upon him to answer both the allegations in the bill and the special interrogatories therein propounded. Larmer answered fully and directly, denying every material allegation, and also each of said interrogatories.

Numerous depositions were taken by both parties. The suit was originally brought in the circuit court of Lee county, but for cause was removed to the circuit court of Washington county, wherein, on the 26th of July, 1888, by consent of parties, the cause was heard in vacation, when, the bill being taken for confessed as to the other defendants, and it appearing that the claims to parts of the land in controversy had been surrendered by the defendants, M. D. Richmond and S. E. Shelburn, and that the controversy as to the right of way of John Jessee, over the land in controversy, had been adjusted by agreement between the parties, it was adjudged, ordered and decreed that said Richmond and Shelburn be thereafter enjoined from asserting their said claims; that the injunction theretofore awarded in the cause be perpetuated as to the sum of $40, excess of interest paid by complainant to defendant, Larmer, on the 2d day of January, 1884; the sum of $12, excess of interest paid 2d day of January, 1885; and the sum of $80 as of the 20th day of February, 1885, the damages fixed upon by the parties on account of John Jessee's right of way over the land in controversy, as appears by written agreement, filed among the papers in the cause, marked "X. Y."; and that after crediting said several sums as of the dates aforesaid, the said injunction be dissolved without damages as to the residue of the judgment for $1,000, with interest thereon from the 1st day of January, 1884, till paid, and the costs at law; and that the complainant recover of the defend-

ant, Emmet B. Larmer, his costs in this suit expended, to be credited on the judgment aforesaid as of the date of the decree, &c. And on the application of the complainant, an appeal and *supersedeas* was allowed by one of the judges of this court, from so much of this decree as dissolved the injunction as aforesaid.

*A. L. Pridemore,* for the appellant.

*J. B. Richmond,* for the appellees.

RICHARDSON, J. (after stating the case) delivered the opinion of the court.

All other questions having been disposed of, and there being no appeal or complaint here as to the disposition of them, the sole question to be considered by this court is, did the circuit court err in dissolving the injunction upon the terms specified in said decree? Or, to state the proposition differently, was the complainant, Graham, entitled to have an abatement for the alleged deficiency of twenty-eight acres in the tract of land purchased by him from the defendant, Larmer, described in the title bond from the latter to the former by metes and bounds and as "containing about 274 acres, be the same more or less." The proper solution of this question depends upon whether the parties intended to sell and buy by the acre or in gross, and this must be determined by a proper construction of the agreement and the circumstances of the transaction. And it has been laid down that the courts will rather take it that a contract is by the acre than in gross, whenever it does not clearly appear that the land was sold by the tract and not by the acre. 2 Lomax Dig., 85; *Hundley* v. *Lyons,* 5 Munf. 342. In all cases of contracts for the sale of lands by a specific number of acres, the settled doctrine of this court is, that the parties are entitled to compensation for a deficiency or

excess in the specified quantity, beyond what may be reasonably imputed to small errors, from variation of instruments or otherwise; the estimate in such case being supposed to be the result of mistake by the contracting parties, by reason whereof they are not precluded in equity from enquiry into what was the real contract, by the words "more or less" inserted in the contract or in the deed of conveyance. 2 Lomax (2d ed.), 84; *Joliffe* v. *Hite*, 1 Call, 301.

But when the real contract is fully understood to be for the sale and purchase of a tract of land, as it may contain more or less, the purchaser takes the tract at the risk of gain or loss, by deficiency or excess in the number of acres contemplated, and neither can resort to the other for compensation on the ground of either event; *ib.*

Judge Lomax says: "The effect of the words 'more or less,' added to the statement of the quantity, had never, it was said by Sir William Grant (1 Vis. and B., 376–7), been yet absolutely fixed by decision; being considered sometimes as extending only to cover a small difference, the one way or the other, sometimes as leaving the property altogether uncertain, and throwing upon the purchaser the necessity of satisfying himself with regard to it. That description is rendered still more loose when are superadded the words 'by estimation.'" Of the words "more or less," Bouvier says: "Words, in a conveyance of land, or contract to convey lands, importing that the quantity is uncertain and not warranted, and that no right of either party under the contract shall be affected by a deficiency or excess in the quantity," citing 17 Ves., 394; Powell, 397. So in contracts of sale generally 2d B. and Ad., 106. And the author adds: "In case of an executory contract, equity will enforce specific performance without changing the price, if the excess or deficiency is very small; but not if the excess or deficiency is great, even though the price reserved be per acre. In 2d B. and Ad., 106, it was held that an excess of fifty quarters over three hundred quarters of grain was not

covered by the words 'three hundred more or less,' if it was not shown that so large an excess was in contemplation." 2d Bouv. Law. Dic., 256, and authorities cited. And Bouvier further says: " In case of an executed contract, equity will not disturb it, unless there be a great deficiency; citing 2 Russ., 570; 1 Pet. C. C., 49; or excess; citing 8th page, ch. 312; 2 Johns, 37; Ord., 133; 1 V. and B., 375; or actual misrepresentation without fraud, and there be a material. excess or deficiency," citing 14 N. Y., 143.

To the same effect, in .general, is the doctrine uniformly held by this court, and although it has never been definitely decided what is the deficiency for which an allowance will be made to the purchaser of a specified quantity of land; yet it was held by this court, in *Nelson* v. *Matthews*, 2 H.. and Munf., 164, that a deficiency of eight in a tract of five hundred and fifty-two acres was no more than a purchaser might reasonably expect.

. It may be stated generally, that the principle of relieving purchasers for deficiencies not imputable to variations of instruments and small errors in surveys, is never departed from except in cases of sales by the tract, when it clearly appears that the purchaser agreed to take the hazard of all deficiencies upon himself, as in *Nelson* v. *Carrington*, 4th Munf., 332; or where, from exceptionable circumstances, the rules should be departed from, as to the mode and measure of relief, as was the case in *Yost* v. *Mallicote's adm'r*, 77 Va., 610.

The right of the purchaser, where a misrepresentation, though innocently, has been made as to quantity, is to have what the vendor can give, with an abatement out of the purchase-money for so much as the quantity falls short of the representation. This is the rule generally; although the land is neither bought nor sold professedly by the acre, the presumption is, that in fixing the price, regard was had on both sides to the quantity which both supposed the estate to consist of. The demand of the vendor, and

the offer of the purchaser, are supposed to be influenced in an equal degree by the quantity, which both believe to be the subject of their bargain; therefore a ratable abatement of price will, probably, leave both in nearly the same relative situation in which they could have stood if the true quantity had been originally known. Sir William Grant, in *Hill* v. *Buckly*, 17th Ves., 401; referred to in 2d Lomax Dig., p. 83.

The following cases fairly exemplify what constitutes a sale by the acre:

In *Nelson* v. *Carrington*, 4th Munf., 332, an agreement was entered into between the vendor and purchaser, on the 12th day of July, 1794, stating that the former had sold to the latter a tract of land containing about five thousand one hundred and thirty acres, more or less, at the price of thirty shillings per acre, the quantity to be ascertained by actual survey, if the purchaser should require it. Liberty was reserved to the purchaser, until the first of the succeeding August, to see the land and to determine whether he should take it or not. He saw the land, and before the first of August determined to take it, which confirmation was endorsed and signed by the parties on the original agreement. Various payments were made by the purchaser in pursuance of the agreement, and he entered into possession on the 25th December, 1794. In 1802, the purchaser had a survey made of the land, and discovered that the tract of land, instead of containing five thousand one hundred and thirty acres, contained only four thousand one hundred and twenty-five, or four thousand one hundred and twenty-six acres. Whereupon the purchaser filed his bill to enjoin judgments rendered by the vendor for balances of the purchase-money, and to have a decree for the conveyance of the land. The court held that the agreement was a sale by the acre; and that even if the agreement had contained no clause giving the purchaser the election to have a survey, he was entitled to relief for the deficiency which appeared. And as there was no time mentioned in the contract for the asser-

tion of the election to survey the land; and as, at the same
time that the agreement had bound the purchaser to particu-
lar days, happening within a short time, in relation to con-
cluding the bargain, taking possession of the land, and giving
bonds for the purchase-money, the right of election was not lim-
ited by the terms of the contract; that right was not taken away
by the lapse of time, or the circumstances proven in the case.

So, in *Carter* v. *Campbell*, Gilm. R., 159, it was held that an
agreement to sell lands contained within specified boundaries,
supposed to be a certain number of acres, at a fixed price per
acre, is a sale by the acre and not in gross.

And in *Beirne* v. *Erskine*, 5 Leigh, 59, where, by articles for
sale of a parcel of land, the vendor contracted to sell and con-
vey to the vendee the land particularly described, containing
one hundred acres, for $2,000 payable in instalments.    Both
vendor and vendee were well acquainted with the tract, and
believed it to contain one hundred acres, and no more.    Upon
a survey, which a purchaser of the vendee's interest in the
contract insisted should be made, in order to ascertain the cor-
rect quantity, and which the vendor assented to, it turned out
that the tract contained one hundred and thirteen acres; and
there was parol evidence that the intent of the parties was a
sale by the acre, at $20 per acre, and that, on the vendor offer-
ing to convey the land to the assignee of the vendee, as con-
taining one hundred acres, he insisted on a survey to ascertain
the quantity, before he should complete the purchase, in which
the vendor acquiesced.    On a bill filed by the vendor, it was
held:   1st. That though the parol evidence of the intent of
the parties was inadmissible to explain or vary the written
articles, yet the parol evidence touching their conduct as to
the execution of the contract was admissible.   2d. That con-
sidering the belief of both parties, that the tract contained one
hundred acres, the articles imported a sale by the acre.    And
3d. That the purchaser having insisted on a survey, and the
vendor having acquiesced, the former was, on this ground,

bound to pay for the excess of the thirteen acres; and, consequently, the vendor was entitled to payment for the excess, at $20 per acre.

On the other hand, the following cases aptly illustrate the circumstances under which a sale of land will be held to be a sale in gross, and not by the acre.

In *Hull* v. *Cunningham*, 1 Munf., 330, where the terms of the agreement, or title bond, were for the sale and conveyance "of a certain tract of land, known by the name of Crab Bottom, said to contain three hundred and seventy acres, be it more or less, &c., to-wit, all that tract left him (the vendor) by his father, J. C., deceased;" the purchaser claimed for a deficiency of one hundred and twelve acres less than the quantity stated in the agreement, or title bond. It was decided that the sale was in gross, and not by the acre.

In *Russell* v. *Keran*, 8 Leigh, 9, a sale of land was evidenced by a title bond executed by the vendor to the vendee with condition to make to the vendee "a good and sufficient deed or title to a certain plantation in Shenandoah county, situate on Thorn's Brook, containing four hundred and five and a half acres, be the same more or less." No conveyance of the land had ever been made. A bill was filed by the heirs of the vendee against the vendor; and the complainants claimed an abatement, because the land had fallen short upwards of one hundred acres. There was evidence in the case tending to show the intention of the parties to make a sale in gross, as the defendant swore in his answer was the case—and this court decided that it was a sale in gross, and that the complainants were entitled to no abatement. And Brockenbrough, J., contended upon the terms of the bond, that independent of the evidence, it was a sale in gross at the hazard of the vendee.

In *Pendleton* v. *Stewart*, 5 Call, 1, the agreement was to sell "eleven hundred acres of land, more or less, to the vendee, adjoining the vendor's land, for the sum of £330." The purchaser claimed for a deficiency which was afterwards discov-

ered; but relief was denied him, his purchase being considered as a purchase in gross. This decision was doubtless influenced largely by the peculiar circumstances of the case. The vendor, Stewart, resided in the county of King George, and the vendee, Pendleton, in the county of Culpeper. The land purchased by Pendleton adjoined his lands in Culpeper, and his opportunities of knowing the true quantity and value of the land were greater than those of the vendor who lived remote therefrom, and with these advantages the vendee, Pendleton, wrote the agreement for the purchase of 1,100 acres, more or less. There seems to have been evidence that the real agreement was that the vendor should sell and the vendee purchase the tract for the sum of £330, whatever might be the number of acres therein. There was a deficiency of 160 acres; and upon the discovery that there was a deficiency, the vendor offered to take the land back, but the vendee refused. Moreover, the bill charged that the agreement between the parties was that the lands should be paid for at the rate of £30 per 100 acres, and that it was, by mistake, written as above. The answer denied that the defendant sold the land at £30 per 100 acres, and alleged that he sold it at a fixed price; and stated some explanatory circumstances which happened at the time. Each of the judges delivered opinions. Pendleton, J., said: "The deficiency, though suggested in the bill, is not admitted by the answer, nor absolutely denied; the defendant saying only that "some time after the contract, he heard it said that part of the land, sixty or seventy acres, were lost, but he knew not the fact." And *Wiggenton*, who made the survey privately, at the desire of Pendleton, only says, that he was stopped by other persons' lines, *as he was informed;* but who those other persons were he does not say, nor are their names mentioned in the bill. Here, then, is a defect of proof. Had there been no such defect of proof, it does not appear that in this case the plaintiff would have been entitled to compensation. The principles established by the decree in the case of *Jollife* v. *Hite*, 1st

Call, 329, seem to me to be perfectly correct; and imply that the warranty tacitly annexed to every contract, that the thing bought or sold shall correspond with the representations made of it, at the time of concluding the contract between the parties, is neither waived nor destroyed by the insertion of the words "more or less," in a contract for the sale of lands by a specific number of acres, if an error beyond what may reasonably be imputed to the variation of instruments, or other similar causes be afterwards discovered. But where the real contract is to sell a tract of land, as it may contain, *more or less*, fully understood to be so, between the parties, these words, *more or less*, imply a waiver of the warranty, as to the specific quantity, on the part of the buyer, and an agreement on the part of the seller, not to demand more than the fixed price, though, on the one hand, there should be an *excess*, or, on the other, a *deficiency* in the quantity supposed: both parties being willing to abide by such presumptive, or probable evidence of the quantity as they were then possessed of; but, of which, neither pretends to have an accurate and perfect knowledge; and which neither insists upon, as a condition annexed to the purchase, or sale; which in the other case, is supposed to be done, and to be reciprocal.

Judge Tucker then, after discussing other circumstances which may have influenced, and likely did influence the purchaser, Pendleton, proceeds to say: "The answer positively denies that the sale was at a certain rate per 100 acres; and insists that it was for a fixed price. This is not contradicted by any testimony, and corresponds with the agreement drawn by the purchaser himself; and thus clearly brings the case within the latter principle established by the decree in *Jollife* v. *Hite*. Besides, the defendant states an offer, which is not denied, made by himself to Pendleton, which *Pendleton* refused; and which proves that he was not, in fact, deceived, or dissatisfied with his purchase." Carrington, Fleming and Roane, J. J., concurred in opinion with Judge Tucker. Lyons, P., dissented,

upon the ground, that in his view of the principles announced in the decree in *Jollife* v. *Hite*, the words *more* or *less*, standing alone, are subject to restrictions; and that where a considerable deficiency occurs, there should be relief. The decree in *Jollife* v. *Hite* was as follows: " That in all cases of contracts for the sale of lands by a specific number of acres, the parties are entitled to compensation for a deficiency or excess in that quantity, beyond what may reasonably be imputed to small errors from variations of instruments or otherwise ; the estimate being supposed to be made from mistake in the parties, and are not precluded in equity from enquiry into what was the real contract, by the words *more or less* inserted in the deed of conveyance. But, where the real contract is to sell a tract of land, as it may contain, more or less, fully understood to be so, the purchaser takes the tract at the risk of gain or loss, by deficiency or excess in the number of acres contemplated; and neither can resort to the other for compensation on the ground of either event; and this having been the real contract between the parties in the present case, there is no error in the said decree. Therefore," &c.

Thus, in the two classes of cases above referred to, we have the underlying principles which govern courts of equity in either granting or refusing relief in case of deficiency or excess. It will be observed, too, that, upon the question of compensation, the substantial distinction is between a sale that is a contract of hazard, and one that is not. In the leading Virginia case of *Blossing's admr's* v. *Beatty*, 1st Rob., 304, Judge Baldwin reviewed all the prior decisions of this court upon the subject in hand ; and the principle deduced therefrom was, that courts of equity entertain jurisdiction and grant relief upon the ground of mistake, and this whether the sale was at a specified price per acre, or a sale of a tract supposed by both parties to contain a definite number of acres, for an aggregate sum or gross price, and that if, in either case, there was a mistake as to the quantity, equity will give relief,

with compensation for the excess or deficiency, as the case may be; but that the right to relief, otherwise clear, may be excluded by a stipulation at the time of the sale, that the estimated quantity shall, in any event, be taken as the actual quantity—the parties thus making a contract of hazard.

Judge Baldwin says: "The principle upon which equity gives relief in cases of excess or deficiency in the estimated quantity upon the sale of lands, I understand to be that of mistake; whether the mutual mistake of the parties, or the mistake of one of them, occasioned by fraud, or culpable negligence of the other. I do not perceive any other principle upon which the jurisdiction can be founded; for if there has been no mistake, either in the contract itself, or the execution of the contract, the parties must stand upon their legal rights, to be adjudicated and enforced in a legal forum, unless the question should arise incidentally in a court of chancery in the exercise of some other branch of its jurisdiction." And in the course of his opinion, the same learned Judge says: "The question of compensation usually arises (*   *   *) not in sales by the acre, but in sales for a gross sum. In the latter cases, the enquiry to be made in the first place is, whether the parties made a mistaken estimate of the quantity which influenced the price; and then, whether, notwithstanding such mistaken estimate, they have waived the right to compensation by an agreement of hazard. In the absence of all direct evidence, the safest general rule, I think, is, that an estimate of the quantity by the parties, whether in a contract executed, or a contract executory, ought to be taken *prima facie* to have influenced the price, for quantity is usually an important element of the agreement, and can hardly be supposed to have been disregarded by the parties, or to have been unmeaningly stated by them in a solemn contract. As a mere matter of description in a conveyance, it is for the most part useless, and more emphatically so in an executory contract. That the statement of the quantity has not generally been re-

garded as a matter of indifference, is evident from the frequent introduction of the additional words 'more or less,' the habitual employment of which can be for no other purpose than to show that the parties do not intend to bind themselves for the precise number of acres mentioned; and the effect which the courts have given to.these words (which have been construed to cover only small deficiencies or excesses, attributable to variations of instruments and the like, and not important deviations ( * * * ) illustrates the strong leaning of the courts against the inference of a contract of hazard."

In order to a just appreciation of these remarks, and in order to a proper application of them in any given case, it is important to bear in mind that the learned judge was considering a case in which there was a sale of a certain tract of land, as to which there was a clear misdescription of the boundary, and in which the description, as to boundary, and in which the description, as to quantity, called for a specific number of acres, without the addition of the usual words "more or less," the deed in that case calling for 280 acres, and the deficiency being twenty-seven acres. Hence the propriety, in that and like cases, of applying generally the rule that an estimate of the quantity by the *parties*, ought to be taken *prima facie* to have influenced the price; that being a case in which *both parties* were mistaken as to the estimated quantity, and in which the clear inference was that the estimate of quantity influenced the price; and, therefore, a proper case for the application of the general rule laid down by Judge Baldwin. But the rule thus formulated and applied has no application to the case of a sale by the tract containing so many acres, more or less, and where the parties agree, in all events, to be governed by the given estimate, which makes the contract one of hazard as to quantity, and necessarily excludes the interposition of equity on the ground of mistake.

Tested by these principles, the sole question to be considered and determined by this court is, did the circuit court err in

dissolving the injunction as to the residue of the judgment for $1,000, with interest thereon from the 1st day of January, 1884, and the costs at law, after allowing as credits thereon the several sums mentioned in its decree, as of the dates specified, and also the costs of this suit in that court? Or, in other words, was the contract of sale and purchase one of a sale by the acre, or was it a sale in gross or contract of hazard as to quantity. If the latter, then it is clear that the appellant, Graham, was not entitled to an abatement of the purchase price of the land for the alleged deficiency of twenty-eight acres.

Graham alleges in his bill that, on the 14th day of June, 1883, he purchased of Larmer a certain tract of land in the county, being a tract conveyed to said Larmer by his father, the late John Larmer; that for this tract of land he agreed to pay the sum of $6,000, and that he executed on the day of sale, his three bonds therefor—one for $4,000, payable January 1st, 1884; one for $1,000, payable January 1st, 1885, and the other for $1,000, payable the 1st day of January, 1886, the last two bonds bearing interest from January 1st, 1884; that at the time of the sale Larmer represented to him that the tract contained 274 acres, and that Larmer then (on the day of sale) executed to him a title bond, which was drawn by the courses of Larmer's deed from his father, and that Larmer subsequently conveyed the land to him by a deed drawn in conformity with the title bond.

Graham then alleges in substance that, inasmuch as Larmer executed his title bond and conveyed the tract in pursuance of the deed to the latter from his father, and inasmuch as Larmer's declarations and representations before and at the time of the sale were that the tract contained 274 acres, it is shown that the tract was believed to contain that number of acres; when in truth and in fact it only contained 256 acres, a deficiency of twenty-eight acres. That he (Graham), on the day of sale, enquired of his vendor, Larmer, how many acres there were

in the tract, and that Larmer replied, "274;" that thereupon he (Graham), took out his pencil and paper and calculated by dividing the price asked, $6,000, by 274, the number of acres represented, his vendor looking on as he figured, and that, when the result was ascertained, one or the other (Graham thinks it was Larmer) said, "that is nearly $22 per acre;" that Larmer then added, "that is mighty cheap; there," pointing to some very fine land, "is land worth $50 per acre," and that he (Graham) then pointed to other less valuable land and replied. "there is land not worth near as much, and when you average a tract of land at $20 or $22 per acre, that is about the worth of any of our lands," and that Larmer said, "that is all I ask;" that he (Graham) then said, "are you certain you have that number of acres?" That Larmer replied, "every foot of it," and said, "go with me to the house and see my deed from my father, for before it was conveyed to me by my father he had it surveyed and run out by one Anderson, one of the best surveyors in the county;" that they went to the house, got the deed, saw that it called for 274 acres, more or less, and that upon these stipulations and representations the bargain was closed and the said title bond was drawn as before stated. And Graham charges in his bill that, "said contract and sale was made under a mutual mistake, as he believes, of his vendor and himself, as to the quantity of said tract;" that he "knows he was mistaken and deceived, and that such mistake greatly influenced him in the price agreed to be paid therefor."

Not content with these specific allegations in his bill, Graham propounds to Larmer quite a large number of special interrogatories, and among them, this one: "Did you not see the said Graham make the calculation herein set forth, and see the result, as stated herein before to be about $22 per acre, and did not the conversation as herein detailed, occur? If you deny that it did, state what did occur, and what you repre-

sented said tract to contain, and whether or not you exhibited your deed and referred to Anderson's survey?"

This interrogatory is broad and comprehends everything alleged in the bill touching the alleged representations made by Larmer before and at the time of the sale as to the number of acres in the tract. Larmer's answer is directly responsive, full and explicit. After responding to the bill in other particulars, not here involved, he says: "It is true that the title bond, which was drawn from the deed, and the deed of respondent to complainant call for 274 acres, more or less, but it is not true that respondent made any representations or uttered any declarations which could in the least lead complainant to believe that the tract of land shown him did actually contain that number of acres, or any other certain number; that complainant did ask respondent how many acres there were in the tract, to which he replied that his deed called for 274, more or less, and had been surveyed by Anderson, but he did not know how many acres there were in the tract; that "complainant then made a calculation and remarked that it was nearly $22 per acre," to which respondent replied, "it figures that, but I am not selling you the land by the acre; I will not vouch for the number of acres; I have been all round the land with you, have shown you all the lines and courses, have shown you the entire boundary and told you all about it, and again pointed over it and said, now you see it; if you want it at $6,000 you can have it, and not one cent less, for, said he, I can get that price any time just as it is, and wanted him to distinctly understand that he was buying it just as he saw it, and that respondent would not vouch for the number of acres;" to which complainant answered, "I will risk that"; that complainant and respondent then went into the house, and complainant requested respondent to lock the door and have no one present, which was done, and complainant then drew the title bond, executed his notes, and the contract was closed;

that "this is the language used by complainant and respondent in regard to the land, and the language employed by the complainant in his bill is untrue." And the respondent, further answering, "positively and emphatically denies that he said he was certain his land contained every foot of 274 acres, and that the bargain was closed upon any such stipulations and representations." He further "denies that the contract and sale was made under a mutual mistake as to the quantity of land in the tract, or any other kind of mistake, and that complainant was neither mistaken nor deceived, and could not have been influenced thereby; for as soon as respondent learned that complainant was setting up these objections and pretending dissatisfaction, he came from his home in Bristol, Tennessee, and went upon the land, where complainant was, and told him he understood he was dissatisfied with his land trade, and then and there proposed to take the land back, and again and again proposed to take it back and even pay him a large sum of money to let him have it back, but complainant as often refused, and would neither pay for the land nor let respondent have it back."

Surely, answer could not be more full, direct and complete. And as, under the well established rule, the answer must be taken as conclusive until overthrown by the testimony of at least two witnesses, or of one witness and strong corroborating circumstances, upon the bill and answer alone the case is clearly with the appellee, there being, in the entire record, no testimony except that of the appellant himself, and no circumstance seriously tending or having any tendency whatever either to sustain the testimony of the appellant or the case as stated in his bill—nor anything, in fact, unless it be the very feeble support to be derived from the mere descriptive call in the title bond and deed for 274 acres, "be the same more or less."

In the petition for appeal and in the argument here, it is

insisted on behalf of the appellant, that while the appellee denies in his answer the mutual mistake charged in the bill, he admits it in his deposition. This is clearly a misapprehension of the testimony of the appellee. He says nothing that can be fairly construed into an admission that the sale was induced or the price influenced by any mutual or other mistake. So that the effect of the answer stands unimpaired in this respect.

Moreover, not only does the record fail to disclose anything to destroy or even weaken the effect of the answer, but, on the contrary, there is abundant evidence to sustain it. The deposition of Thomas J. Larmer, Sr., appears in the record. He was the father-in-law of the appellant, Graham, and the uncle of the appellee, Larmer. He was aged, physically infirm and unable to attend court, and hence this deposition was taken in the action at law between the same parties and touching the same subject-matter here involved. He relates a conversation between Graham and himself, at the house of the latter, in which Graham distinctly stated to him that he bought the land in question, not by the acre, but by the boundary, and only claimed by the boundary; that E. B. Larmer, the appellee, took him and *showed* him round the boundary, and reserved none of it, but that Thomas (meaning T. J. Larmer, Jr., a brother of the appellee,) was then claiming a little scrap that Emmet (meaning the appellee) had sold him; that witness said to Graham, Thomas will let you have a little piece somewhere else, and have no difficulty about it; and Graham said he would; that Graham told witness that he gave six thousand dollars; that he said nothing about buying by the acre, but only mentioned that the deed called for 270 acres, but that after he had looked at the boundary he thought there was more land and a better bargain than he thought it was.

When Graham had this conversation with his own father-in-law, he doubtless had not conceived—much less matured,

his after-developed scheme for procuring an abatement of the purchase price, upon the bare assumption of the ground of mutual mistake as to quantity.

Other witnesses, notably T. J. Larmer, Jr., and M. C. Parsons, testify to hearing a conversation between the appellant and appellee, on the land in question, when or not very long after it was known that Graham was preparing to ask for an abatement of the price he had agreed to pay Larmer, in which conversation Graham in effect admitted that he had not purchased the land by the acre, but by the boundary, and that Larmer offered then to take the land back, and offered to pay Graham a considerable sum of money to let him have it back, but that Graham refused.

Again, at the very time that Graham was maturing his plans for an abatement of purchase money, he was delinquent in making his payments for the land according to his contract, and was the recipient of favors at the hands of Larmer, in the shape of the extension of the terms of payment, for which, it is true, he paid the trifling consideration of two per cent. in excess of the lawful interest, to the extent of which, among other things, an abatement has been decreed him, and the relief granted him is certainly all, to say the least, that he can justly demand.

Again, during the period of extended indulgence by Larmer, Graham procured an *ex parte* survey, by which the deficiency of twenty-eight acres was discovered. When asked by Thos. J. Larmer, an adjoining land owner, why he was having the survey made, he announced that his object was to ascertain the true quantity, so as to have his land properly listed for taxation. Yet, after thus ascertaining the deficiency, he made large payments to his vendor, and accepted from him a deed in pursuance of the title bond. These circumstances, taken all together, afford strong presumptive evidence that, so far from the sale and purchase having been made under a

mutual mistake entitling the purchaser to compensation, it was mutually understood and agreed between vendor and purchaser to be a contract of hazard as to quantity, precluding the idea of compensation to either, in case of excess or deficiency. The decree of the circuit court is right and must be affirmed.

DECREE AFFIRMED.