Argued 6 April; decided 20 June, 1898.

### McCOURT v. JOHNS.

[53 Pac. 601]

33  561<br>
f35  149

Sufficiency of Tender—While section 852 of Hill's Ann. Laws, makes a writ-
ten offer to pay a particular sum, if not accepted, equivalent to an actual
production and tender of the money, it does not dispense with readiness and
ability to make the tender good: *Ladd* v. *Mason,* 10 Or. 308, applied.

Vendor and Purchaser—Rescission of Contract of Sale—A vendee will
not be allowed to rescind a contract for the sale of land where the vendor,
without fraud or neglect, is unable to convey title to an insignificant portion,
not essential to the enjoyment of the balance for the purpose intended, and
it cannot be said that but for such portion the vendee would not have made
the contract.

Specific Performance—A court of equity will require specific performance
by a purchaser, although the vendor is unable to give title to ten acres out of
a tract of 224, where the portion to which the defective title appertains does
not affect the value and reasonable enjoyment of the remainder for the pur-
pose for which it was intended, and the vendor consents to a ratable reduc-
tion in the price.

Rescission of Sale by Vendee—Liens—A purchaser cannot rescind his con-
tract for the purchase of land because there are liens upon it amounting to
less than the purchase price, since he could retain their amount from the
purchase money, and especially so where this necessity is obviated by a ten-
der of proper releases.

Rescission by Vendee—Laches—Where the vendee of land, in possession
under a bond for a deed, retains possession without complaint for a long
period of time after learning that the vendor is unable to convey title to an
insignificant portion of the land sold, and until the time of performance on
his part arrives, such laches will generally constitute a waiver of the right to
rescind.

From Marion : Henry H. Hewitt, Judge.

Suit by James McCourt against George W. Johns and
others for a rescission of a contract for the sale of land
and an accounting.   There was a cross bill by defendants,
asking a foreclosure of a mortgage subsequently executed,
and a sale of the property, etc.   From a decree in favor
of defendants, plaintiff appeals.

Affirmed.

33 Or.—36.

For appellant there was a brief over the name of *Prescott & McCourt,* with an oral argument by *Mr. John McCourt.*

For respondent there was a brief and an oral argument by *Messrs. William H. Holmes* and *George G. Bingham.*

Mr. Justice Wolverton delivered the opinion.

On September 16, 1891, the plaintiff became the owner, by mesne assignments and transfers, of a certain bond for a deed made, executed and delivered by George W. Johns and Julia A. Johns, widow, to Edward Snell, June 21, 1886, whereby, in consideration of the sum of $7,255.52, to be paid by him on June 21, 1896, without interest, and that he would assume the payment of $1,000 and accumulating interest due the school fund of the State of Oregon, they obliged themselves to convey to the said Snell or his assigns, certain real property situate in Marion County, Oregon, described as containing 229.32 acres. Snell executed his note for the said sum of $7,255.52, conditioned as by the bond indicated, and prior to its maturity he and his assigns paid the amount due the school fund, and $255.52 upon the note. On the twenty-eighth day of September, 1895, in a suit then pending in the Circuit Court of the State of Oregon for Marion County, against James McCourt, the plaintiff herein, and George W. and Julia A. Johns, two of the defendants herein, and others, it was duly adjudged and decreed that the Salem Improvement Company and other plaintiffs therein were the owners in fee and entitled to the possession of 6.28 acres of said land, thereby ousting McCourt and the said Johns therefrom. It was further decreed therein that McCourt and the

Johns pay the costs of suit, amounting to $426. It is shown by the testimony that the said George W. and Julia A. Johns were not the owners nor entitled to the possession of another small parcel of such premises, containing 4.90 acres ; and it is further apparent that, by an error of computation, the number of acres mentioned in the bond is 3.75 acres in excess of the actual acreage according to the description. On June 20, 1896, plaintiff made to defendants George W. and Julia A. Johns an offer in writing to pay the amount remaining due upon said promissory note, and to perform all the conditions of said bond on his part, to be accepted by defendants at their option on either the twentieth, twenty-first or twenty-second days of the same month, and notified them of the absence of title to the several parcels hereinbefore alluded to, and of their inability to convey the same, and that if they were unable or unwilling to convey to plaintiff a good and sufficient title to all the lands described in such bond, and surrender full possession thereof, he would rescind their contract, and demanded of defendants repayment of all moneys paid under the terms of the bond, together with the reasonable value of all improvements made upon the premises during the time of its occupancy by the plaintiff and his predecessors. On the same day defendants offered to deliver to plaintiff a deed executed by them covering the lands described in the bond, and on the tenth day of July, 1896, the defendant George W. Johns tendered to the plaintiff a warranty deed to all the lands described in the bond, in accordance with its terms and conditions, together with a release of the mortgage executed by George W. Johns to Julia A. Johns, and a deed from the Salem Improvement Company of all its interest in and to said premises, and demanded the payment of the amount due upon the $7,255.52 note, and notified

plaintiff in writing that he was ready and willing to comply with all the terms and conditions of said bond. The plaintiff refused to accept the deeds and releases, and failed to pay the sum demanded, but notified defendants of his rescission of the contracts. George W. Johns assigned his interest in the $7,255.52 note to Julia A. Johns, and thereafter, on December 31, 1886, to secure the payment of a certain other promissory note of $10,500, with interest at six per cent. per annum, due from him to the said Julia A. Johns, he made, executed and delivered to her a mortgage upon all his interest in the premises described in the bond. . Subsequently another mortgage was given for the purpose of correcting some errors discovered in this one. The releases above referred to were intended as a discharge of both these mortgages. Prior to the commencement of this suit, the said Julia A. Johns became indebted to the defendant John Hughes, and, to secure the payment of such indebtedness, she indorsed and assigned to him the said notes of Snell and George W. Johns, and the mortgage securing the latter.

The plaintiff prays a decree declaring a rescission of the bond or contract of sale, for the recovery of the part of the consideration paid, and for an accounting and recovery for expenditures made in improving the premises. The court below decreed, in accordance with the prayer of the defendants, a foreclosure of the bond and of the mortgage subsequently executed, and directed that the proceeds arising from a sale of the premises under such foreclosures be applied : *First*, to the payment of the costs of suit; *second*, to the payment of the said indebtedness of Julia A. Johns to the defendant John Hughes ; *third*, to the payment of the Salem Improvement Company's claim for costs in the former suit; and, *fourth*, to the payment of the balance due on said

bond to Julia A. Johns, after deducting the foregoing claims, and the overplus, if any remains, to the plaintiff. To reverse the decree, the plaintiff prosecutes this appeal, wherein two questions are presented for our consideration : (1) Was plaintiff's alleged tender of payment in writing sufficient; and ( 2 ) was he entitled to a rescission of the contract by reason of the inability of George W. and Julia A. Johns to convey a good title to a small portion of the premises described in the bond.

As it pertains to the first, the defendants tender a distinct issue in their answer, in the following language : "Admit that plaintiff, on or about the nineteenth day of June, 1896, made to the defendants George W. Johns and Julia A. Johns an offer in writing, substantially as pleaded in their complaint, but these defendants say that the said offer in writing was not made in good faith, and the said plaintiff was not able at said time to pay the sums of money due upon said bond, or any part thereof." The plaintiff's own testimony disposes of this question, as it shows a failure to establish a valid tender. He says, in substance, that he engaged the money of John Savage ; that Savage was to let him have $30 per acre upon the bottom land, provided the title was good ; but, when informed that the title was bad, he refused to make the loan. This clearly shows that plaintiff was not prepared to make his tender good, if the defendant had accepted the offer and been prepared to have complied with his demand in its minutest detail. The statute (§ 852, Hill's Ann. Laws) has provided that "an offer in writing to pay a particular sum of money is, if not accepted, equivalent to an actual production and tender of the money "; but it was not the intention of the legislature thereby to dispense with the readiness and ability on the part of the one making the tender to pay in substantial accord with its terms. It was so held

in *Ladd* v. *Mason*, 10 Or. 308, and the rule there estab-
lished is decisive of the question here.   From the fact
that the plaintiff knew, at the time of the alleged tender,
that the defendants Johns could not comply with the
conditions of the bond by conveying a good title to all
the premises described therein, it is evident he had no
intention of having the money ready for acceptance on
the part of the Johnses, nor was he able at the time to
make good the terms of his written tender.

This brings us incidentally to another question.   It is
urged that, by reason of the Johns' inability to convey
a good title to all such premises, a tender of the unpaid
consideration was not indispensable to the right of the
plaintiff to rescind the contract, and this depends upon
the disposition of the second question above outlined.   It
was proven that an error of 3.75 acres was made in com-
puting the acreage from the description contained in the
bond.   There was a failure of title to 6.28 acres, recovered
by the Salem Improvement Company and others, and to
an additional 4.90 acres known as the "O. & C. R. R.
Tract," which, in the aggregate, makes a diminution
from the original estimate of 14.33 acres, leaving a tract
of 214.39 acres, touching the title to which there is no
dispute, except that it is subject to the lien of the Salem
Improvement Company's judgment of $426, and the
mortgage given by George W. to Julia A. Johns for
$10,500.   It is not of much importance to determine
whether the sale which is the subject of the present
controversy is one in gross or by the acre, because, if it
is one in gross, the small difference of 3.75 acres in the
estimated acreage upon which the amount of the consid-
eration was probably based is so slight in comparison
with the total that it does not lead to a presumption of
mistake or fraud ; and, none such being pleaded, there
could be no relief for this cause.   If, however, the sale

was by the acre, the respondents have consented to an abatement of a proportionate amount of the purchase price, which they could properly do, it not appearing that the exact acreage bargained for was a material incident in superinducing the purchase. That is to say, the purchase was not made for any specific or particular purpose whereby the exact quantity of land estimated to be contained in the tract described became a material element in the transaction: See *Seligmann* v. *Heller Clothing Co.*, 69 Wis. 410 (34 N. W. 233); *Harrison* v. *Talbot*, 2 Dana, 258; *Graham* v. *Larmer*, 87 Va. 222 (12 S. E. 389).

Making allowance for the error in calculation, there is left yet 10.03 acres to which the respondents are unable to convey good title. Ought the plaintiff to be now permitted to rescind his contract, and recover back the purchase money paid, together with his expenses for improvements, because of such inability of the respondents to fully comply in this respect with the terms and conditions of their undertaking? There is no intimation of fraud in connection with the transaction, and it is simply a case where the obligors find themselves unable to comply strictly with their obligation, without design and apparently without willful neglect, they believing at the time of its execution that they possessed a good title to all the premises, and had lawful right to convey the same. The principle or rule of law applicable here is that, if it should appear that the part or portion of the entire subject-matter is so essential or material to the enjoyment of the residue that it cannot reasonably be supposed the purchase would have been made without it, the contract should be dissolved in toto. Chancellor Kent says: "The good sense and equity of the law on this subject is that if the defect of title, whether of lands or chattels, be so great as to render the thing sold unfit

for the use intended, and not within the inducement to purchase, the purchaser ought not to be held to the contract, but be left at liberty to rescind it altogether'': 2 Kent's Com. *475, *476. But if, however, the part to which the defective title appertains is small, or inconsiderable in comparison with the whole, and does not affect the value and reasonable enjoyment of the remainder for the purposes for which it was intended, and is susceptible of compensation, the vendee will not be permitted to rescind, or, rather, which is the equivalent in principle, may, upon a ratable abatement of the purchase price, be required in a court of equity to specifically perform: Pomeroy, Spec. Performance, § 453; *Foley* v. *Crow*, 37 Md. 51–60; *Stoddart* v. *Smith*, 5 Binney, 355; *D' Wolf* v. *Pratt*, 42 Ill. 198; *Towner* v. *Tickner*, 112 Ill. 217; *Buck* v. *McCaughtry*, 5 T. B. Mon. 217–230.

It appears from the evidence that the premises in question were chiefly valuable for dairy purposes, for which they were purchased by Snell, and that the two tracts or parcels aggregating 10.03 acres were covered with gravel, and of small value. These parcels are inconsiderable in comparison with the whole tract purchased, constituted no special inducement to the purchaser, and are not necessary to the ample enjoyment of the remainder for the purposes intended. There was some contention that a portion of the land to which defective title appertains subsequently proved to be of peculiar value, because of the deposits of sand and gravel thereon, and its proximity to the City of Salem, and that it was of especial advantage to the remaining portion of the premises as giving access to the Willamette River, but this was not sustained by the evidence, if it may be said otherwise to have become important to a determination of the controversy. It is apparent, therefore, that under the rule, the plaintiff was without legitimate

grounds upon which to base a rescission of the contract as against unwilling vendors, and this disposes also of the contention that a tender of the purchase price remaining due was unnecessary because the defendants were unable to comply strictly with their engagements. In so far as the judgment lien may affect the question, the plaintiff could have retained sufficient of the balance of the consideration due to have discharged it (Pomeroy, Spec. Performance, section 452), but the necessity for this was obviated by a tender of a release of such judgment, as well as a discharge of the mortgage lien, which removed any cause for complaint arising from these incumbrances.

There is, however, another feature of the controversy which militates against the plaintiff's position. He has long been aware of the defective title to these parcels, but, with this knowledge, he has remained in full possession of the premises, and enjoyed the advantages and benefits to be derived therefrom, without complaint, and made no attempt to rescind, or effort to be relieved from the situation, until performance on his part became necessary under the contract. When cause exists for rescission, the law requires the party seeking to take advantage of it to act without delay, so that the other party to the contract may be placed as nearly in *statu quo* as possible; and a nonobservance of the rule will generally constitute a waiver of the right to rescind: *Foley* v. *Crow*, 37 Md. 51. Upon the whole, it seems more equitable that plaintiff should be required to make compensation, with abatement of the purchase price to cover error and loss by inability of defendants to convey title, than that he should be permitted at this late date to rescind when it is impossible to measurably place all parties to the transaction in *statu quo*. The decree of the court below is in accord with this principle, and, having properly

marshaled the assets to arise from sale of the premises under foreclosure of the bond and mortgage, it should be affirmed, and it is so ordered.

AFFIRMED.

Decided 3 April, 1899.