Argued October 11, affirmed November 19, 1918.

# HELTZEL *v.* BAIRD.*

(175 Pac. 851.)

**Reformation of Instruments—Mutual Mistake as to Land Reserved.**

1. Where defendant, when he purchased interest of vendee's assignee in contract for purchase of land, knew that written contract had been modified by oral agreement so as to reserve a bridge and additional land as part of roadway specified therein, and thereafter a written contract was entered into between him and, the vendors which, because of mutual mistake, failed to reserve the bridge and additional land, vendors were entitled to reformation.

**Specific Performance—Defense—Shortage in Land Sold.**

2. Specific performance of contract to sell twelve acres of land will not be denied vendors because of a shortage of about one tenth or one half of an acre, where the land was not purchased for a specific purpose.

**Vendor and Purchaser—Rescission—Grounds.**

3. Vendee will not be allowed to rescind because vendors are unable to convey title to one tenth or one half of an acre of a tract of about twelve acres, where land was not purchased for a specific purpose.

[As to remedy of vendee in case of deficiency in quality or quantity, see note in Ann. Cas. 1915D, 1108.]

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

On January 4, 1910, the plaintiffs and James M. Slyter entered into an executory contract for the purchase and sale of about twenty acres of land out of the Jesse Adams Donation Land Claim in Marion County. On December 9, 1910, Slyter sold and assigned to S. W. Cooley and G. W. Small his right, title and interest in the contract. Thereafter it was verbally agreed that Small should relinquish his rights and be released from his obligations; that all of the twenty-acre tract, excepting about 11.87 acres, should

---

*Authorities passing on the question of vendee's right to rescind contract because of mistake as to extent of grantor's title to land are collated in a note in 15 L. R. A. (N. S.) 1039.          REPORTER.

be exempted from the written contract and restored to the plaintiffs and that the 11.87 acres should be purchased by the said Cooley in accord with the terms of the written agreement and the verbal modifications thereof. In the original contract a strip of ground only ten feet in width, along the east line of the property, was reserved.

It is alleged that after the execution of the contract it was discovered that the ten-foot reservation was not wide enough to include the bridge located near the northeast corner of the tract; that it was verbally agreed between the plaintiffs and Cooley, who then held the contract, that the reservation therein for roadway purposes should be enlarged so as to include the bridge and the land lying between the northwest end thereof and the county road; that for such purpose it was orally agreed that the reservation for roadway should be twenty feet instead of ten; that it was the intent of the parties to make such reservation wide enough to include the whole of said bridge; that it was then verbally agreed between all of the parties that the bridge and the land on which it was located should be excepted from the premises covered by the contract and considered a part of the roadway; that in August, 1911, while Cooley held the contract, the County Court of Marion County, on the petition of Cooley and others, duly laid out and established said road; that the defendant had knowledge of all such matters when he acquired Cooley's interest in the contract through assignment on September 12, 1914, after which it was verbally agreed between the plaintiffs and the defendant that as a substitute for the original written agreement and the modifications thereof, a new written contract should be drawn, containing the covenants of the original agreement and such verbal

exceptions and modifications thereof, so that such written agreement should clearly specify and define the rights of the parties as modified by such verbal agreements, and that a new agreement was executed, but that through mutual mistake and oversight it did not correctly express or define the actual modified contract between the parties.

The defendant tendered the balance of the purchase price of the property and demanded a deed under the terms of the written contract, and for the failure and neglect of the plaintiffs to execute and deliver a warranty deed conveying to the defendant in fee simple, free of any charge or lien, the whole 11.87 acre tract, including the roadway and the ground upon which the bridge is located, he elected to rescind and commenced an action in which he alleged that the plaintiffs did not have a fee-simple title, and asked for a judgment against them for the moneys paid by him and his predecessors in interest, and the amount alleged to have been expended for improvements, in the aggregate sum of $1,334.58.

To defeat the action, the plaintiffs here filed a cross-bill alleging the above verbal agreements made with Cooley and that there was a mutual mistake in the omission of such verbal agreements from the written contract with the defendant, asking for a decree of reformation, that when reformed the contract should be specifically enforced and that the defendant should be required to pay the balance due on the contract.

The defendant filed his answer to the cross-bill, in which he admits that he purchased Cooley's interest and filed an action for the $1,334.58, but denies all of the material allegations of the complaint and alleges that on or about February 13, 1915, he and the plaintiffs modified the written contract as to the east twenty

feet reserved for road purposes, contending that the plaintiffs should be estopped to claim or assert that any mistakes were made in the execution of the written contract between them.

Testimony was taken in open court before the trial judge, who made findings of fact which in legal effect sustained all of the material allegations of the plaintiffs' cross-bill, and based thereon rendered a decree correcting the description in the contract to conform to the verbal agreements and calling for a specific performance of the contract as corrected. From the decree the defendant prosecutes this appeal.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Walter C. Winslow.*

For respondents there was a brief with oral arguments by *Mr. James G. Heltzel* and *Mr. Roy F. Shields.*

JOHNS, J.—There is a sharp conflict in the testimony. The trial judge heard all of the evidence and in legal effect found that in September, 1914, the defendant personally inspected the tract of land in question; that Cooley pointed out the corners to him; that they passed along the roadway on the east and across the bridge to the county road on the west, then along such county road to the southeast corner of the lands; that it was believed by Cooley and the defendant that the bridge near the northeast corner of the property was within the reservation made for the road; that in August, 1911, while Cooley was the owner of the contract, the County Court of Marion County, based on the petition of Cooley and others, had duly laid out and established the roadway over said lands; that in

the increase of the reserved strip from ten to twenty feet in width it was the intent of all the parties to make such reservation wide enough to include the bridge and the land on which it was located; that the ground between the northwest end of the bridge and the county road should be considered a part of the roadway and reserved and excluded from the contract; that after his examination of the premises and with full knowledge .of all such understandings and agreements between the plaintiffs and Cooley, the defendant purchased Cooley's interest in the contract.

It was further found that the original contract having been lost or mislaid, a new contract was drawn between the plaintiffs and the defendant about September 12, 1914, which was intended to carry out the Cooley contract as modified between him and the plaintiffs; that a mistake as to the lands to be reserved and excluded from the 11.87 acre tract was made in the preparation of the contract and that such mistake was mutual between the parties.

The defendant filed an answer in which he admits his purchase of Cooley's interest and the execution of the written contract between himself and the plaintiffs; that he relies upon the terms and conditions of such written contract and that he filed an action in which he sought to rescind and to recover from the plaintiffs $1,334.58, which is the amount of the purchase price and the alleged value of the improvements made upon the property. He further alleges that on February 13, 1915, the contract was modified between the parties, to the effect that in lieu of the east twenty feet reserved for road purposes the plaintiffs should exclude from their deed a strip of land fifteen feet wide off and from the south side of said premises, and that plaintiffs should deed to the defendant on the

completion of the contract a strip of land along. the east side of said premises. In the answer the defendant also pleads a breach of the written contract, in that the plaintiffs cannot convey a fee-simple title.

1–3. After a careful reading of the testimony we are convinced that the defendant acquired his interest in the contract with full knowledge of all of its terms as modified by the oral agreement between the plaintiffs and Cooley, and that the defendant was far more interested in rescinding the contract and recovering the money which he had paid and expended on improvements, than he was in obtaining a specific performance of the contract. This is apparent from his own testimony. While it is true that the defendant will not receive the full 11.87 acres, yet it appears from the testimony of the plaintiffs that the amount of the shortage is about one tenth of an acre, and according to the testimony of the defendant, about one half of an acre. It is not claimed that the realty was bought for any specific purpose or that the land embraced within the shortage has any material value for any purpose. In fact, it appears from the record that a portion of it is under water. The defendant relies upon his right to rescind and does not claim any reduction in the price on account of the shortage.

In the written contract between them, executed September 12, 1914, it was agreed that when the defendant complied with the terms and conditions by him to be kept and performed, the plaintiffs would then execute "a warranty deed conveying said premises in fee simple," and there was no provision that the property should be free and clear of any charge, lien or encumbrance. It also appears from the record that the only lien upon the property was a mortgage in favor of the State Land Board and that a release from such mort-

90 Or.—11

gage was executed and tendered as to the tract in question.

The legal questions here involved are very similar to those in the case of *McCourt* v. *Johns,* 33 Or. 561 (53 Pac. 601), in which the plaintiff sought "a rescission of the bond or contract of sale, for the recovery of part of the consideration paid and for an accounting and recovery of expenditures made in improving the premises," and in which the court denied the relief asked for and rendered a decree of specific performance, holding that:

"The small difference of 3.75 acres in the estimated acreage upon which the amount of the consideration was probably based, is so slight in comparison with the total that it does not lead to a presumption of mistake or fraud; and, none such being pleaded, there could be no relief for this cause. * * That is to say, the purchase was not made for any specific or particular purpose whereby the exact quantity of land estimated to be contained in the tract described became a material element in the transaction."

The trial court heard all of the evidence and rendered a decree in favor of the plaintiffs. We are of the opinion that the decree should be affirmed, without costs to either party on appeal. AFFIRMED.

McBRIDE, C. J., and BEAN and OLSON, JJ., concur.