Foley *vs.* Crow.

(Decided 5th December, 1872.)

---

DANIEL J. FOLEY *vs.* FREDERICK CROW.

*Right of a Vendor to obtain Specific Performance of a Contract in Equity, although unable to Convey to the Vendee to the full extent bargained for— Waiver of the right to Rescind a Contract of Sale—Application for the Rescission of a Contract to be made without delay.*

Where a vendor is unable from any cause, not involving *mala fides* on his part, to convey each and every parcel of the land contracted to be sold, and it is apparent that the part that cannot be conveyed is of small importance, or is immaterial to the purchaser's enjoyment of that which may be conveyed to him, in such case the vendor may insist on performance with compensation to the purchaser, or a proportionate abatement from the agreed price, if that has not been paid. This, however, cannot be done where the part in reference to which the defect exists is a considerable portion of the entire subject-matter, or is in its nature material to the enjoyment of that part about which there is no defect.

On the 8th of March, 1858, an agreement was entered into between the appellant and appellee, whereby the former agreed to sell and convey to the latter four military lots, west of Cumberland in Allegany county, for a specified sum to be paid in instalments. The lots were not described by their numbers, but were described as "one with the dwelling of Col. Young on it, and the one joining it on the west; both touching on or near the Pennsylvania line; and the two lots next under them," &c. By the express terms of the agreement the vendee was "entitled to no buildings but the dwelling of the

late Col. Young, and the outhouses attached to it." Upon the payment of the purchase money, the vendor bound himself to convey to the vendee a good title for the lots thus described. The cash instalment was paid at the date of the contract. The vendee entered into possession under the contract. The appellant was owner of other lots than those sold to the appellee, adjoining, each lot containing fifty acres; and as such owner on the 14th of April, 1858, he sold and conveyed lot No. 509 to F. who entered into possession and used and occupied it as his own exclusive property. It was afterwards discovered that by mistake and from want of knowledge of the numbers and location of the several lots owned by the appellant, the lot sold to F. was one of the lots agreed to be conveyed to the appellee. None of the buildings to which the appellee was entitled under his contract of purchase were situated on this lot; nor did it appear that this lot was the inducement to the purchase, or was at all material or essential to the appellee's enjoyment of the other three lots. The appellee became aware of the claim and possession of F. as to lot No. 509, very soon after the deed to the latter; and nevertheless remained in possession of the other three lots exercising acts of ownership over them for several months; and with full information of the claim and possession of F. he paid the second instalment of the purchase money. F. was willing to surrender his lot upon being reimbursed his outlay upon it. About the last of December, 1858, or the first of January, 1859, the appellee gave notice to the agent of the appellant that he had determined to rescind the contract of purchase, and on the 15th of February, 1859, he filed his bill for a rescission and cancellation of the contract, &c. on the ground that by reason of the conveyance of lot No. 509, he could not have conveyed to him what under the contract he was entited to receive. HELD:

That whatever right of rescinding the contract, if any, the conveyance of lot No. 509 to F. may have afforded to the appellee, that right had been waived, and the appellant as vendor had the right to insist upon the specific execution of the contract of purchase *as to the three lots to which he could make title;* and that as to the lot sold F. an abatement should be made from the contract price of the whole.

An application for the rescission of a contract must be made without delay, and the party seeking to rescind must come to his election as soon as the cause for rescission is discovered, so that the parties to the contract may be placed as nearly in *statu quo* as possible.

APPEAL from the Circuit Court for Allegany County, in Equity.

The appeal in this case was taken from a decree of the Court below, passed on the 9th of November, 1870,

requiring the appellant to pay to the appellee the sum of $719.82, with interest from the date of the decree, and costs    By the decree the appellee was allowed for the money paid on the purchase, for improvements on the premises, and for the value of certain personal property replevied, except the part that was taken by title paramount to that of the appellee, with interest thereon respectively.

The facts of the case are sufficiently stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*William Walsh*, for the appellant.

The bill in this case goes on the ground of rescinding the contract as for a total failure of consideration.   If the consideration were totally swept away, of course the notes, and mortgage and contract would fall too, and could not be enforced by the appellant.   In that case, the remedy would be complete at law, and an action on the contract would give the appellee all the damages to which he could be entitled.   On the theory of the bill, it is an effort to recover damages in a Court of Equity, and pass over the Common Law Courts and trial by jury, whose province it is to assess damages and determine what, if any, improvements were made, and what they were worth.   There is no fraud, discovery or complication that would make it an exception, as stated in *Rider & Trotter vs. Gray, et al.*, 10 *Md.*, 282 ; 2 *Sto. Eq. Juris.*, 798 ; *Scott vs. Billgerry*, 40 *Miss* , 119 ; *Lewers vs. The Earl of Shaftesbury, Law Rep.*, 2 *Eq. Cas.*, 270.

On the facts proved in the case, the appellee had no right to rescind the contract.   And if he had a right to rescind, he should have done so promptly on discovering

the cause that would entitle him to rescind. He could not deal with the property afterwards as his own, and speculate as to whether it would turn out to his advantage to hold on to it or not. In rescission, the other party must be placed in *statu quo;* and he is entitled to know, at the earliest moment, whether the contract will be carried out or not, that he may make some other disposition of the property. Crow himself swears he did not give up the property until about the *time the third payment was due,* that is, *the 1st of December,* 1858, and Walsh proves that the first time Crow ever intimated giving up the property, was after the replevin issued, which was on the 28th of December, 1858. Crow also swears (and claims it) that he cleared seven or eight acres of the land, and fenced about twenty acres, and that he raised a crop of potatoes, and seeded rye in the fall. All this was done and could have been done only through the summer and fall of 1858. Thus he held on to the property as his own, and used it in every way as his own, and hauled bark and shingles off it until after the third payment was due, in December, 1858.

Crow says Finzel went into lot 509 after he was in possession and had the survey made, which he was to make. And in May or June, 1858, when he paid the $100, and long before it, he knew Finzel was in possession of lot 509, and *still affirmed the contract by paying* $100 *on it,* and told Mr. Walsh that it made no difference, that he had as much as he could work in the other three lots, and that if he wanted it he would get it and pay Finzel for his work; and if not, he would take an abatement of $250, the price of the lot. He cut shingles, peeled bark, cleared ground, made fences, planted potatoes and sowed rye, all summer and fall after this, and never thought of giving up the contract until after the replevin of the cattle. Under these facts, it was too late to rescind, even if he ever had a right to do it.

2 *Parson's Contracts*, 192 ; *Lawrence vs. Dale*, 3 *John. Ch. Rep.*, 23, *affirmed in* 17 *John. Rep.*, 437 ; *Hogan vs. Weyer*, 5 *Hill*, 389 ; *Hunt vs. Silk*, 5 *East.*, 449.

The conduct of the appellee, was a waiver of whatever pretence he might have for rescinding the contract.   He might have an abatement, but could not throw up the property and get back what he paid.   It is a case of compensation.     *Fordyce vs. Ford*, 4 *Bro. C. C.*, 495 ; *Calcraft vs. Roebuck*, 1 *Ves. Jr.*, 221 ; *Fleetwood vs. Green*, 15 *Ves. Jr.*, 594 ; *Margravine of Anspach vs. Noel*, 1 *Mad.*, 310 ; *Ogilvie vs. Fojambie*, 3 *Mer.*, 52 ; *Burnell vs. Brown*, 1 *Jac. & Walk.*, 168 ; *Warren vs. Richardson, Younge*, 1 ; *Haydon vs. Bell*, 1 *Beavan*, 337 ; *Barnet vs. Gaines*, 8 *Alabama*, 373 ; *Flint vs. Woodin*, 9 *Hare*, 618 ; *McMurray vs. Spicer*, 5 *Law. Rep , Eq. Cas.*, 527–41.

This was a case of simple mistake, and the appellee was to make the survey for identification of the property, and did make it, but failed to notify the appellant of it.

The appellant was never called on to make the appellee a deed for the land, and could not be, as the time to make the deed had not elapsed when the bill was filed. The testimony of Walsh and Finzel show that the appellant was able at any time to procure the title to lot 509, and have it conveyed to the appellee.  *Buchanan vs. Long, et al.*, 3 *Gill*, 97 ; *Robb vs. Montgomery*, 20 *Johns.*, 15 ; *Greenby vs. Cheavers*, 9 *Johns.*, 126.

But even if Crow had a right to rescind the contract, and get back his purchase money, the decree is erroneous in allowing interest and the value of improvements. Crow was about a year in the possession of the house and land, for which he agreed to pay $2,000.   If he had paid the whole $2,000, the possession of the property would be equivalent to the interest.   But he paid only $150, and surely the possession of the property, cultivating, grazing, and cutting shingles, and peeling bark on it,

was worth the interest. Allowing the value of alleged improvements is equally wrong. Whatever improvements Crow made was his own voluntary act. He could not charge the appellant with them, who did not employ him, or authorize him to make them. Such a principle would enable Crow to "improve" the appellant out of his property.

Even if the land had been conveyed to Crow with covenant of warranty, and he had been evicted by superior title, he could only recover on the covenant of warranty, the actual money paid and interest, and could recover nothing for increased value or improvement made on the land. How is the right of recovery and measure of damages made broader on a mere agreement to convey, than on an actual conveyance of land with warranty of title? *Peters vs. McKeon*, 4 *Denio*, 546; *Kelly vs. The Dutch Church*, 2 *Hill*, 115, 116; *Baldwin vs. Munn*, 2 *Wend.*, 405; *Kinney vs. Watts*, 14 *Wend.*, 41.

*J. H. Gordon*, for the appellee.

Was there such a failure of the performance of the contract by Foley as justified the abandonment by Crow? The conveyance of lot 509 to Finzel was good ground for the rescission of the contract. 1 *Sugden on Vendors, Chap.* 7, *sections* 1, 2; *Bank of Columbia vs. Hagner,* 1 *Peters*, 455; *Buchanan vs. Lorman*, 3 *Gill*, 51, 77; *Dorsey, Adm'r., vs. Hobbs*, 10 *Md.*, 412.

There is no evidence to show that Crow waived any right to rescind.

The evidence does not show any ability on the part of Foley, at any time since the execution of the deed to Finzel, to comply with the contract. It must be a legal ability—not a mere possibility of getting the control or title to the lot.

The Court having obtained jurisdiction of the case, for the purpose of the injunction and account, will proceed to do full justice by awarding compensation. *Phillips*

*vs. Thompson,* 1 *John. Ch. Rep.,* 150, 151, *and cases cited there; Rathbone vs. Warren,* 10 *John. Rep.,* 587 ; *King vs. Baldwin,* 17 *John. Rep.,* 384 ; 1 *Stor. Eq. Juris.,* 71.

ALVEY, J., delivered the opinion of the Court.

On the 8th of March, 1858, an agreement was entered into by and between Frederick Crow, the appellee, and Daniel J. Foley, the appellant, whereby the latter agreed to sell and convey to the former, four military lots, west of Cumberland, in Allegany County, for the sum of $2,000, payable $50 in cash, $100 on the 15th of April, 1858, $350, on the first of December, 1858, with interest, and $500 on the first of December, 1859, with interest, payable semi-annually, to be secured by notes, and mortgage of all the vendee's personal property. The remaining $1,000 to be paid, $500 on the first of December, 1860, and $500, on the first of December, 1861 ; for both of which latter instalments, notes were to be given, to bear interest, from the date of the contract, the interest to be paid semi-annually, the property sold remaining as security for the same; and in no event was the property to be conveyed before the full payment of the three first mentioned notes. The lots are not described by their numbers, but are described as "one with the dwelling of Col. Young on it, and the one joining it on the west; both touching or near the Pennsylvania line; and the two lots next under them; the said tract being thus two lots deep from their boundary on the Pennsylvania line." By the express terms of the agreement, the vendee was "entitled to no buildings but the dwelling of the late Col. Young, and the outhouses attached to it." Upon the payment of the purchase money, the vendor bound himself to convey to the vendee, a good title for the lots thus described.

The cash instalment of $50 was paid at the date of the contract, and the notes were given and mortgage

executed for the other three instalments of the first $1,000, according to the terms of the contract of sale. The vendee entered into possession under the contract; and, failing to make payment of the instalment of $350, due on the 1st of December, 1858, the vendor, on the 28th of December, 1858, replevied from the vendee the personal property embraced in the mortgage; and such part of the property thus taken by replevin as was ascertained to belong to the mortgagor at the date of the mortgage, was sold, and the proceeds, amounting to the sum of $166.50, after deducting expenses of sale, were applied to the note of $350. Judgment was rendered in the replevin case on the 15th of October, 1862, for the plaintiff therein.

The appellant was owner of other lots than those sold to the appellee adjoining, each lot containing 50 acres. And being such owner on the 14th of April, 1858, he sold and conveyed by deed lot No. 509 to J. G Finzel, for the consideration of $250. It turned out and was afterwards discovered that, by mistake, and from want of knowledge of the numbers and location of the several lots owned by the appellant, the lot thus conveyed to Finzel was one of the lots agreed to be conveyed to the appellee. Finzel at once entered into possession of the lot sold to him, and used and occupied it as his own exclusive property. This lot, however, was not the one upon which any of the buildings were situated to which the appellee was entitled under his contract of purchase.

The appellee, about the latter part of December, 1858, or the 1st of January, 1859, gave notice to the agent of the appellant that he had determined to rescind the contract of purchase; and on the 15th of February, 1859, he filed his bill in this case for rescission and cancellation of the contract, and of the mortgage, and for an account for the money paid on the purchase, and for money and labor expended on the land, on the ground, that, by

reason of the conveyance of lot No. 509, he could not have conveyed to him what, under the contract, he was entitled to receive. The bill also prayed that the appellant be enjoined from selling any of the property replevied and that such property be returned, and that all further proceeding in the action of replevin be stayed. Nothing appears, however, to have been done in order to obtain the injunction, more than simply filing the bill.

The appellant, in his answer, controverts the right of the appellee to the relief prayed by the bill, and altogether denies the right of the latter to abandon and rescind the contract; and insists that even if the conveyance of lot No. 509, under the circumstances of the case, could be regarded as affording cause for rescinding the contract, the right to do so had been waived by the appellee. It was also insisted that the appellee had ample remedy at law in an action on the contract, in which he could recover damages for the non-compliance by the appellant.

This latter proposition, however, although entirely true, must be taken to assume that there is really no ground to entitle the appellee to rescind, or, if there be ground, that it has been by the conduct of the appellee, waived or lost, or that he has elected not to rescind. These are the questions to be decided on this appeal; the decree appealed from assuming the appellee's right to rescind to have been established.

Of the general proposition contended for by the appellee, there is no doubt that the vendee of an estate in an unexecuted contract, is entitled to have that for which he contracts, before he can be compelled to part with the consideration he agreed to pay; and that the ability of the vendor to convey should exist when his duty by the contract arises to convey, or at the time of a decree for a conveyance, where time is not of the essence of the contract. *Buchanan vs. Lorman,* 3 *Gill,* 51; *Dorsey vs. Hobbs,*

10 *Md.*, 412. But it does not necessarily follow from this general rule that there is no case of specific execution at the instance of the vendor, unless he has ability to convey in strict and exact compliance with the contract, as to the quantity or extent of the subject-matter sold. On the contrary, notwithstanding the general rule just stated, there are many cases, owing to special circumstances where the vendor may obtain specific performance of the contract in equity, although he may not be able to convey to the vendee to the full extent bargained for. And if, in any case, the contract be one that is fit and proper to be thus executed on the application of the vendor, it is clear the vendee can have no option to rescind it, in the view of a Court of equity, whatever may be his right at law.

In a case where the vendor is unable from any cause not involving *mala fides* on his part, to convey each and every parcel of the land contracted to be sold, and it is apparent that the part that cannot be conveyed is of small importance, or is immaterial to the purchaser's enjoyment of that which may be conveyed to him, there the vendor may insist on performance with compensation to the purchaser, or a proportionate abatement from the agreed price if that has not been paid. This, however, cannot be done where the part in reference to which the defect exists is a considerable portion of the entire subject-matter, or is in its nature material to the enjoyment of that part about which there is no defect. To this effect the authorities are abundant and decisive.

In the case of *Poole vs. Thergold*, 2 *Bro. C. C.*, 118, also reported in 1 *Cox*, 273, a party purchased several lots of an estate, to two of which no title could be made and upon a bill for specific performance by the vendor, it not appearing whether the lots were so complicated with each other as to render the lots to which there was no title necessary to the enjoyment of the others, Lord

KENYON, then Master of the Rolls, said, that both parties were to blame; the purchaser in resisting the contract *in toto*; and the seller in insisting upon it *in toto*. He said, moreover, that he was bound to suppose, that the lots to which no title could be made, were not of sufficient importance to make the loss of them a reason for vacating the agreement as to the remainder; and he accordingly decreed a specific performance *pro tanto*. Mr. Sugden says, of this case, (1 *V. & P.*, ch. 7, *sec.* 2, *p.* 31,) that it is in accordance with the established law of the Court of Chancery of England; and he states and treats it as such.

Chancellor KENT (2 *Com.*, 475,) states the principle with the same limitation as above. He says: "In many cases, where the title proves defective in part, or to an extent not very essential, specific performance will be decreed, with a ratable reduction of the purchase money, by way of compensation for the deficiency." But, he says: "The good sense and equity of the law on this subject is, that if the defect of title, whether of lands or chattels, be so great as to render the thing sold unfit for the use intended, and not within the inducement to the purchase, the purchaser ought not to be held to the contract, but be left at liberty to rescind it altogether. This is the principle alluded to by Pothier, and repeated by Lord ERSKINE and Lord KENYON."

In the principle thus stated by Chancellor KENT we fully agree; and as an authority to the same effect, we refer to the case of *Stoddart vs. Smith*, 5 *Binn. Rep.*, 355, 363.

In this case, there is nothing disclosed by the record, from which it appears that the lot No. 509 was the inducement to the purchase, or that it is at all material or essential to the appellee's enjoyment of the other three lots. It has none of the buildings on it, nor does it appear that it has ways, water, or other advantages

which could enhance the value of the three lots for which title can be made, or in any manner contribute to their beneficial enjoyment. The appellee himself was examined as a witness, and in answer to the direct interrogatory as to what inducement lot No. 509 formed to the purchase, he could state none other than that it formed a square with the other three lots. And that it is not very valuable, is manifest from the price paid for it by Finzel, the deed showing the consideration to be only $250. That this lot was sold by mistake, and without the slightest intention on the part of the appellant, to interfere in any manner with the rights of the appellee is perfectly clear from all the evidence in the cause.

But, if it were even conceded that the vendee was entitled to abandon and rescind the contract, because of the vendor's inability to convey a good title to lot No. 509, when it became his duty to do so under the contract, still, under the circumstances of this case, we think he has lost that right.

It is well settled, that applications for rescission must be made without delay, and that the party seeking to rescind must come to his election as soon as the cause for rescission is discovered, so that the parties to the contract may be placed as nearly in *statu quo* as possible. This requirement is founded upon an obvious principle of justice.

Here, the evidence clearly shows, that the appellee became aware of the claim and possession of Finzel, as to lot No. 509, very soon after the deed to the latter; and while he says he did not know that Finzel had a deed for the lot, he admits that he knew of his possession, and that he was clearing the land, and that it was reported that he, Finzel, had bought the lot. The appellee remained in possession of the other three lots, notwithstanding this information, and used and exercised acts of ownership over them, for several months, and cut timber,

and sold bark and shingles from them, and put out a crop of rye in the fall before his attempt to abandon the contract. With full information of the claim and possession of Finzel, the appellee made payment of the second instalment of the purchase money; and in a conversation with Mr. Walsh, the agent of the appellant for the sale of the lots, when asked whether it made any difference that Finzel had the lot No. 509, the appellee distinctly said "it did not; that he had as much land as he was able to work, in the other three lots, and Finzel was going on clearing and improving the lot, and that if he wanted it, he would take it, and pay him (Finzel) for his work upon it, and, if he did not, he would take an abatement of $250, the price of the lot, from the $2,000." Mr. Walsh states that he held several conversations with the appellee, in reference to his purchase, and that the latter never made any complaint about the lot which Finzel had purchased, nor any objection to carrying out his contract; and that the first time any complaint was made upon the subject, was after the personal property, embraced in the mortgage, had been replevied, which was about the last of December, 1858. It is also shewn that Finzel was willing to surrender his lot, upon being reimbursed his outlay upon it.

In view of these facts, we cannot hesitate in declaring, whatever right of rescinding the contract, if any, the conveyance of lot No. 509 to Finzel may have afforded to the appellee, that right has been waived; and that the appellant, as vendor, has the right to insist upon specific execution of the contract of purchase, as to the three lots to which he can make title, and that, as to the lot sold to Finzel, an abatement should be made from the contract price of the whole.

It follows from what has been said, that the decree in this cause, regarding as it does the appellee as having a right to rescind the contract, and as being entitled to

compensation for, not only the money paid on the purchase, but all work and labor performed on the premises, and the value of the personal property replevied, except the part that was taken by title paramount to that of the appellee, must be reversed. The case of the appellee is wholly disproved, and his bill, therefore, must be dismissed.

*Decree reversed and*
*bill dismissed with costs.*

(Decided 5th December, 1872.)