# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 26, 1909.

ROBERT M. SPEDDEN ET AL.
VS.
RICHARD B. FENTRESS ET AL.

*E. P. Keech, Jr.,* and *W. H. DeC. Wright* for complainants.

*George Whitelock, Emory & Cator, Joseph R. Gunther* and *John M. Carter* for defendants.

SHARP, J.—

These proceedings were instituted to obtain a decree for the specific performance of a contract.

In July, 1906, Robert M. Spedden and A. E. Booth, Richard B. Fentress, Peter E. Tome and Summerfield Medairy were partners in business and the owners of certain property.

On July 28th, 1906, the plaintiffs, together with their associates, Peter E. Tome, Summerfield B. Medairy, made an offer to Richard B. Fentress as follows:

"2. We hereby offer to sell to you for the sum of twenty-four thousand dollars ($24,000) cash; six thousand dollars ($6,000) to be paid to each of the undersigned upon the execution and delivery to you by each of us respectively, of an assignment of all of our respective rights, title and interest in and to said electric franchise and in and to all property and assets, including money belonging to the Baltimore Electric Light and Power Company, the co-partnership now operating under said franchise in this city, you to pay all obligations of said co-partnership, and in addition, as part of this second proposition, you shall buy at the sum of eighty-five hundred dollars ($8,500), one-tenth thereof cash upon the

acceptance of this proposition and the balance cash with interest within sixty days thereafter, the negro schoolhouse property adjoining the property of the Baltimore Refrigerating and Heating Company in Baltimore City, which schoolhouse property was caused to be purchased by the undersigned, Richard M. Spedden, for account of the owners of said electric franchise at their request."

Mr. Fentress accepted the proposition in a letter dated August 2nd, enclosing in the letter a check for $850 as stipulated by the parties except as to the schoolhouse, and perhaps some other details which need not be considered at this time. The twenty-four thousand dollars ($24,000) was paid and an assignment made of the property referred to.

Mr. Fentress refused to pay the balance of the purchase money for the schoolhouse, or to accept a transfer, and this bill was filed to obtain a decree for a specific performance of the contract. After the execution of the contract, and before the bill in this case was filed, Mr. Medairy died intestate, and his widow, Rachael B. Medairy, and John M. Carter, esquire, were appointed his administrators.

The bill was filed by Messrs. Spedden and Booth. The defendants are Mr. Fentress, Mr. Tome, the administrators of Mr. Medairy, and Mr. Norton. The schoolhouse property had been bought for the partnership by Mr. Norton. Title was taken in his name as agent for the partners. He still holds the title.

Answers were filed by Mr. Tome, the administrators of Mr. Medairy and Mr. Norton, consenting to a decree for specific performance. Messrs. Spedden and Booth are the active parties in the management of the case.

Mr. Fentress admits the execution of the contract and resists a specific performance for the following reasons:

1. Because the contract is not sufficiently specific and certain, either as to the location of the property, the estate to be conveyed, or the party to convey.

2. He also relies on the Statute of Frauds as a defense.

3. Because of misrepresentations made to Mr. Fentress by Mr. Spedden, (acting for himself and the other vendors) to Mr. Fentress concerning the value of the property.

4. Because of the want of mutuality in the contract.

These defenses will be considered in the order in which they have been mentioned.

It is an elementary proposition that in order to obtain the specific performance of a contract in equity the "contract must be certain and definite in its terms and free from ambiguity."

But this means a reasonable and practical certainty and not the greatest scientific precision. The court will not be subtle and astute in construing a contract or by ingenious speculations over remote and improbable contingencies, raise an uncertainty, and defeat a just claim.

Of all things the law must be practical. The practical difficulty in many of these cases is to determine where to draw the line between the certainty the law requires and the uncertainty which defeats the right to specific performance.

It should be observed that the parties to the contract under consideration were not strangers to each other, they had been partners since 1904. Nor were they without full information concerning the exact location of the property and the estate held. The firm had owned the property for more than a year before the contract was made and used it for the purposes of the partnership. It had been purchased by the partners after full consideration for a definite purpose. Mr. Fentress was personally active in the initial proceedings.

Indeed, Mr. Fentress does not contend either in his answer or testimony that he was, in fact, ignorant of the location of the property, or in any way injured by what he considers the inadequate description of the property in the contract. He relies entirely on this branch of the case on the rule in equity regarding certainty in the terms of the contract, and the statute of frauds for defense.

The property is described in the contract as the "negro schoolhouse property adjoining the property of the Baltimore Refrigerating and Heating Company, which schoolhouse property was caused to be purchased by the undersigned, Robert M. Spedden, for account of the owners of said electric franchise at their request."

The suggestion that there may have been some other "negro schoolhouse" adjoining, some other property of the

Baltimore Refrigerating and Heating Company, which other schoolhouse had also been purchased by Mr. Spedden for the firm and therefore the contract is uncertain, is perhaps within the limits of possibility, but it is most improbable. Such a contingency is too remote to be practical. It is mere speculation.

It appears from the evidence that this property originally belonged to the City of Baltimore. Mr. Fentress, Mr. Spedden and their associates, believing it all to be a desirable and much needed addition to the property belonging to them, desired to purchase it. Mr. Spedden was directed to buy it for the firm. Up to this point Mr. Fentress concedes he knew all about the transaction.

It was thought best to proceed indirectly to some outsider to prevent the property "being run up" on the firm, as Mr. Fentress expressed it in his testimony. Mr. Spedden requested Mr. Norton to act as agent which he accordingly did. He bought the property, paid for it and took the title in his own name. This was all done at the instance and for the benefit of the firm. The advertisement of the sale and the deed consummating the transaction described the property by metes and bounds.

From these documents it appears that the negro schoolhouse property adjoining the property of Baltimore Refrigerating and Heating Company caused to be purchased by Mr. Spedden was a property described in the bill in this case, viz.: Beginning on the northwest side of Barre street, at the distance of 100 feet northeasterly from the northeasternmost corner of Barre and Little Green streets, running thence northeasterly binding on Barre street, 51 feet 10 inches; thence northerly, about 23 feet and so forth.

*"Id certurn est quod certurn reddi potest."*

The contract therefore satisfies the rule in equity regarding certainty in contracts of which the specific performance is sought. For this same reason it satisfies the requirements of the Statute of Frauds.

It is next contended that according to the true construction of the contract, Mr. Fentress' agreement was to buy a fee-simple.

The fact that the parties were not strangers should be again referred to. They were contracting with reference to property owned jointly by them. Mr. Fentress was buying property of which he was already a part owner.

The true construction of the contract is that he bought the estate in partners held, whatever it was. It is true ordinarily the estate to be conveyed, if less than a fee-simple, should be described in the contract, but where the parties are part owners and one sells to another, the true construction is that it refers to the estate they hold.

But, however this may be, the contract refers to the purchase by Mr. Spedden. It appears from the advertisement and also the deed that the property so purchased was leasehold, subject to a ground rent of $300.

I do not think the testimony warrants the conclusion that Mr. Fentress thought he was buying a fee-simple.

It may be he did not know or had forgotten at the time of the sale that the property was leasehold. He took an active part in the purchase, until Mr. Norton took charge of matters.

His memory is probably at fault when he says he first knew it was leasehold in November, because he wrote the Safe Deposit & Trust Company, the owners of the ground rent, in November, that he had assumed the payment of the ground rent from August 1st. There is certainly no evidence of any assumption to pay the ground rent except in connection with the contract to purchase made in August.

I do not think the testimony sustains the charge of misrepresentation on the part of Mr. Spedden as to the purchase price of the property.

Finally it is contended that the contract was lacking in mutuality.

It will be observed that the clause in the offer relating to the schoolhouse differs in phraseology from the preceding clauses referring to the sale of the franchise, etc. In the latter the estate conveyed is described as "all our respective right, title and interest in and etc.," while the language in the other clause is "you shall buy," etc.

This is explained by the fact that the title to the property was in the name of Mr. Norton who held as agent for the partners. If Mr. Norton were not a party to this case, I would say the

contract was lacking in that mutuality essential in contracts of which specific performance is sought.

It is certain that Mr. Fentress could not have compelled the specific performance of the contract by Mr. Spedden and the other parties, without Mr. Norton's concurrence. Mr. Norton was not a party to the contract and Mr. Fentress had no claims against him.

It is undoubtedly true that at the time the contract was made, the mutuality required in contracts on which specific performance is sought, did not exist.

Mr. Fentress and his associates were in a position to compel a specific performance by Mr. Fentress, who was without this remedy.

Mr. Norton was not a party to the contract. Mr. Spedden and his associates did not have the title and could not have been compelled, without the concurrence of Mr. Norton, to make a conveyance.

It may have been even doubtful if they could, under the Statute of Frauds, have compelled Mr. Norton to make a conveyance to them.

There was nothing in writing, and he paid for the property with his own funds. While it may be that a case could have been made out against Mr. Norton by the firm, yet, as a practical matter, it might have been difficult had he resisted. It certainly would have been impossible for Mr. Fentress.

But this objection was removed by Mr. Nortons action in this case. He filed an answer admitting the facts and consenting to a decree. In his testimony he again and again distinctly renounces all interest in the property, and declares he bought it as agent for the firm, that they paid his adances for interest, ground rent, etc., and he has always considered it their property. He has always thought he was bound to convey, whenever the conveyance was asked, and that they were bound to take it whenever he demanded this action.

This is substantially his attitude toward the controversy. But it is well settled that it is enough if the parties have title at the time of the decree.

Mr. Spedden and his associates are now in a position to make a title, and the objection of want of mutuality is,. therefore, removed.

It should be observed, however, that it is not contended that time was the essence of the contract. Buchanan vs. Lorman, 3 Gill 51; Dorsey vs. Hobbs, 10 Md. 417; Foler vs. Crowe, 37 Md. 59; Maryland Co. vs. Kuper, 90 Md. 531.

I will sign a decree for the specific performance of the contract.