## VANCE v. WADE.

[No. 12,026.   Filed January 28, 1925.   Rehearing denied April 22, 1925.   Transfer denied January 27, 1926.].

1. WATERS AND WATERCOURSES.—*Contract to convey land bounded by nonnavigable river.*—A contract to convey land described as northeast of a named nonnavigable river entitles the grantee to such a conveyance as will make him a riparian owner with all the rights of such ownership in the waters of such river. p. 137.

2. SPECIFIC PERFORMANCE.—*Suit for specific performance of a contract of purchase for certain land cannot be maintained when plaintiff does not own all the land and part is burdened by an easement.*—A suit for specific performance of a contract to purchase certain described land could not be maintained where the vendor, at the time for performance, did not own the fee of all the land and an easement for the construction of a line of poles across one border was held by a third party, and the court would have no right to make an allowance for the defects in title, as that would be to make a new contract for the parties.   p. 139.

3. SPECIFIC PERFORMANCE.—*That public records disclose that vendor does not own all of land contracted to be conveyed does not authorize action for specific performance by the vendor.*— The fact that a vendee of real estate could, by examining the records, know the extent of his vendor's ownership of the land which the latter has contracted to convey and ascertain the fact that there were existing easements on the property would not enable the vendor to maintain an action for specific performance, as one who is not the owner of real estate may enter into a valid contract to convey it to another, if he is the owner when the time comes to convey.   p. 141.

From the Noble Circuit Court; *Arthur F. Biggs,* Judge.

Action by William J. Wade for specific performance against Nelson Vance.   From a decree for the plaintiff, the defendant appeals.   *Reversed.*   By the first division.

*Grant & Foote,* for appellant.

*Bothwell & Vanderford* and *Luke H. Wrigley,* for appellee.

ENLOE, J.—The appellee, hereinafter called the plain-tiff, brought this action against the appellant, herein-after called defendant, to enforce specific performance of a contract for the sale of certain land.

On October 10, 1922, the plaintiff, as the owner of said land, entered into a contract with the defendant, vendee, by which he agreed to sell and the defendant agreed to buy the lands in question, at and for a certain specified sum. In said contract, the lands so sold were described as—"that part of the northeast quarter of sec-tion eighteen, in township thirty-five north, range eight east, north and east of Elkhart River." It was further agreed that payment for said land should be made, deed executed, and possession delivered on or before March 1, 1923. There were also other stipulations in said con-tract, but as a consideration of them is not necessary to the decision of this case, they are not set out.

The issues being settled, the cause was tried by the court, which, a request therefor having been made, found the facts specially and stated conclusions of law thereon favorable to the plaintiff. There was a decree of specific performance as prayed.

The defendant duly excepted to each conclusion of law, and, as we view the case, these exceptions are the only matters necessary to be considered.

The court found that the right of way and tracks of the Lake Shore and Michigan Southern Railway Com-pany extend across the said tract of land in question, diagonally, from the southeast to the northwest; that on March 3, 1887, said railway company purchased of the then owner a strip of land 150 feet wide, lying imme-diately north of its right of way and extending entirely across said quarter quarter section, and that thereafter, but prior to April 26, 1895, said railway company dredged and constructed a ditch on the said strip of land so purchased and diverted and turned the waters

of Elkhart river into and through said ditch, and said ditch has since said time been the channel of the said river; that between the north line of the lands of said railway company, the northerly line of said 150-foot strip, and the water's edge of said river, on the northerly side thereof, at the ordinary stage of said water, there is a strip of ground ninety-six rods in length and of the average width of one and one-half rods, which is the property of said railway company, and to which the plaintiff has no title; that the plaintiff does not own and cannot convey a merchantable title to a strip of land one and thirty-one hundredths chains in width east and west, and seven and one hundred forty-five thousandths chains in length, north and south, off of and across the west end of that part of the said quarter quarter section lying north of the lands of said railway company; that since March, 1898, a fence had been maintained along the northerly line of the lands owned by said railway company and between the lands of said company and plaintiff herein; that in September, 1917, the Indiana-Michigan Electric Company, a corporation, acquired by deed, the right to erect a line of poles and wires for the carrying of electric power along the south line of plaintiff's said lands, together with the right to erect and maintain all necessary braces, stubs, cross-arms, guys and anchors in connection with said lines, and with the right to ingress and egress for such purposes, said poles to be erected as near as possible to the north line of said railway company's lands, and not more than eighteen inches from the fence on the north line of said railway company's lands; that acting under said deed, said company had erected and placed sixteen or seventeen poles along said fence, said poles being sixteen or eighteen feet in height; that said company placed the necessary stubs, braces, cross-arms, guys and anchors on said poles and also at once strung its wires

thereon, and is now maintaining its said line of poles and wires. Many other facts were found, but, as they are not of controlling force in the view we take, they are not herein set out.

The plaintiff herein is standing upon the contract as made; there is no intimation that the contract reduced to writing and signed by the parties does not

1. fully and accurately state the agreement of the parties as actually made, and the question we have to determine therefore is: Was the plaintiff, under the facts as found, entitled to a decree compelling the defendant to purchase and take the land of which the court found he was the actual owner, and to which he could give a merchantable title, notwithstanding the fact that, when the time of performance came, he did not own and could not give title to portions of the land included in his contract? In considering this question, we shall first direct our attention to the strip one and one-half rods wide on the south.

It will be noted that, by his contract, the plaintiff agreed to convey to the defendant "that part of the northeast quarter of the northeast quarter of section eighteen, * * * north and east of Elkhart River," and the question now arises: Where is the south boundary line of the property so stipulated to be conveyed?

In *Sphung* v. *Moore* (1889), 120 Ind. 352, the deed involved described the land conveyed as, "that part of the northeast fractional quarter of section 36, * * * which lies south of the Kankakee river." It was contended by one of the parties that the grantee took title thereunder *only to the meander line,* and, in passing upon the question, the court said: "Counsel claim that the meandered line constituted the boundary line of the northeast fractional quarter of section 36, and that line being at a distance from the bed of the river the plain-

tiff is not a riparian owner. In this counsel are in error. The meandered line does not constitute the boundary line, but the Kankakee river constitutes the boundary, and the plaintiff was a riparian owner." In *Tolleston Club, etc.*, v. *State* (1894), 141 Ind. 197, it was said: "The  *  *  * principal contention of counsel for appellee in this petition is that the meanders of the Calumet river are boundaries of the marginal lots in the several sections as sold by the State. This can not be admitted. It is contrary to all the authorities. Meanders are not boundary lines *unless expressly made so by the instrument of conveyance*" (Our italics). This court in the case of *State* v. *Tuesburg Land Co.* (1915), 61 Ind. App. 553, in speaking of riparian ownership, said: "Under this doctrine, a grant or conveyance of land bounded by a nonnavigable stream carries with it the bed of the stream to its center, unless a contrary intention is manifest from the grant or conveyance itself," and many authorities are cited as sustaining the rule as declared.

Under the averments of the complaint in this case, the contract involved is to be "read from its four corners," and when we read that contract, we find that it says nothing about any "meandered line," nothing about any "railroad lands," nothing about any "easement" for any electric power line, as in any way entering into the terms thereof, but it is a plain, simple undertaking to convey all the land north and east of the Elkhart river in said quarter quarter section, and, under the authorities, said river being nonnavigable, a conveyance of the kind bargained for would make the defendant a riparian owner with all the rights of such ownership in and to the waters of Elkhart river.

Under the findings of the court, the plaintiff, when the time for performance came, and also at the time

of the trial, did not have and could not convey
a merchantable title, not only to the aforemen-
tioned strip along the Elkhart river, but also to
a strip of land off of and across the entire west side of
that part of said quarter quarter section lying north
of the Elkhart river. Indeed, the plaintiff makes no
claim that he was able to perform his contract as made
and as written. Under such circumstances, was he en-
titled to specific performance "with a variance?" In
*Foley* v. *Crow* (1872), 37 Md. 51, it was said: "There
is no doubt that the vendee of an estate in an unexecuted
contract, is entitled to have that for which he contracts,
before he can be compelled to part with the consider-
ation he agreed to pay; and that the ability of the
vendor to convey should exist when his duty by the con-
tract arises to convey, or at the time of a decree for a
conveyance, where time is not of the essence of the
contract." In *Reed* v. *Noe* (1836), 9 Yerg. (Tenn.)
282, it was said: "The bill admits that at the time it
was filed the complainant did not have a legal title to
the entire tract * * * to be conveyed. This being
true, he was not in a condition to perform the contract
on his part, and, as he could not ask the defendant to
take an imperfect title, he had no ground of equity upon
which to come here for the enforcement of his con-
tract." In *Freetly* v. *Barnhart* (1865), 51 Pa. St. 279,
Freetly had agreed to convey to Barnhart certain leases;
his title to some of the leases had failed, but he brought
suit for specific performance. The court said: "A
defect in any * * * of these leases would defeat
the right to specific performance as against the defend-
ant. He was entitled to all or none." In *Page* v.
*Greely* (1874), 75 Ill. 400, the court said: "The mo-
tives and fancies of mankind are so various, that the
law, which recognizes the right of the parties to make
just such contracts as they choose, not prohibited, or

against public policy, will not call upon a man who has contracted to purchase one thing, to explain why he refuses to accept another. * * * The contract, as made by the parties, was definite, equal and fair in its terms. The moment the proposition is admitted, that the court may substitute any other mode of performance, and a title of a different character, transactions of this character, no matter how definite and fair in their terms as made, lose both the quality of definiteness and fairness. The purchaser could have no idea, when he contracted for a particular kind of title, that a court of equity would have the authority to compel him to take another and inferior kind of title. * * * It needs no argument to prove that the substitution by the court of one thing for another, is subversive of the doctrine of the court as to definiteness and certainty in contracts of which specific performance is sought. * * *. If, therefore, the court could disregard the terms of the covenant, and compel him to take a less valuable title, it would not be fair and just towards such purchaser. So that it would be against the fundamental rules governing courts of equity, to decree the specific execution of the contract in this case in the way proposed. It would be to enforce specific performance by the purchaser, with relief therefrom on the part of the vendors. Such an enforcement of the contract is not of the one made, but of another, with terms framed in the discretion of the court, and therefore not certain and definite; with * * * substitution of something the purchaser did not agree to take, and therefore not equal and fair." In the instant case, the defendant agreed to pay for and take, and plaintiff agreed to sell and convey to him, not the lands which the plaintiff actually owned only, as found by the court, but such lands plus the said strip on the west side thereof, and plus the strip on the southerly side thereof, and all with-

out any burden of any easement thereon; he agreed to purchase a farm which would give him, as the owner thereof, riparian rights in and to the waters of the Elkhart river, a farm of which he would be the owner in fee, a farm not burdened with any right of easement held by some other person or corporation, with right of ingress and egress across his lands, to be exercised at any time the holder thereof might desire. The findings conclusively show that the plaintiff was, at no time, in a situation to convey to defendant that which defendant had agreed to buy, that which plaintiff had agreed to convey.

But, it is urged by plaintiff that the public records were open to the defendant, and that he knew, or, by consulting such records, could have known, the
3.    extent of plaintiff's rights, and of the rights of the other parties as the lands in question were affected by such rights. If we grant the plaintiff's contention in this matter, still, it is not decisive. A person may, as between himself and another, a purchaser, make a valid agreement to sell and convey property which, at the time of the making of such contract, he does not then own, and the only thing necessary for him is, that he shall be the owner of such property which he has agreed to convey when the time shall come for him to make his conveyance as agreed upon. *Foley* v. *Crow, supra; Nichol* v. *Nichol* (1874), 51 Tenn. (4 Baxter) 145; *Shaw* v. *Vincent* (1870), 64 N. C. 690.

Where the contract of sale has been partly executed, as where the purchaser has gone into possession of the property, and remains in possession, using the property as his own after he obtains knowledge that the vendor cannot comply with his contract in its entirety, a different rule prevails, and, in such cases, courts of equity frame their decrees according to the equities of the parties. The cases of *McCourt* v. *Johns* (1898),

33 Ore. 561, 53 Pac. 601, and *Keepers* v. *Yocum* (1911), 84 Kans. 554, 114 Pac. 1063, Ann. Cas. 1912A 748, cited and relied upon by appellee, are illustrative.   In the McCourt case, the court said: "There is, however, another feature of the controversy which militates against the plaintiff's position.   He has long been aware of the defective title to these parcels, but, with this knowledge, he has remained in full possession of the premises, and enjoyed the advantages and benefits to be derived therefrom, without complaint, and made no attempt to rescind or effort to be relieved from the situation, until performance on his part became necessary under the contract."   In the Keepers case, *supra,* the purchaser had gone into possession of the land, used and sold property received under the contract after he knew of the alleged defects, and the court held that by his conduct he had estopped himself to ask that the contract be rescinded.   There is nothing in this case which brings it within the law as declared in those cases, and they are, therefore, not controlling.

The appellee also contends that this case falls within the rule as laid down in *Coleman's Exr.* v. *Meade* (1877), 76 Ky. (13 Bush) 358; *Farris* v. *Hughes, Admr.* (1893), 89 Va. 930, 17 S. E. 518, and *Mundy* v. *Irwin* (1915), 20 N. M. 43, 145 Pac. 1080, Ann. Cas. 1918D 713, in each of which cases, there was a *deficiency* in the quantity of land purchased.   The court found the deficiency to be slight, that it did not prejudice the use of the remainder of the land, heard evidence and found as to the value of the deficiency, and decreed specific performance, with an allowance to the vendee on account of such deficiency.   The plaintiff in this case seems to have proceeded in reliance upon the said cases last cited, and there are many other cases of like character, as being authority to sustain a decree of specific performance in his favor.   The trial court seems also

to have been of that view.   This brings us to a consideration of the special findings herein, as to whether they are sufficient to authorize a decree in plaintiff's favor, if we should concede that the plaintiff's position is sound.

The trial court found that the strip on the west side of said lands, the deficiency heretofore noted, was not necessary to the use and enjoyment of the remaining portion of said land, but the findings are silent as to the reasonable value of said strip.   The court also found that the strip of ground lying north of the channel of Elkhart river owned by the railroad company, as hereinbefore set out, was "not necessary to the use and enjoyment of plaintiff's said lands," but the court did not find the value of said strip of land.   The court also found that the Indiana-Michigan Electric Company, in 1917, had paid to the then owner of said farm the sum of $15 as the consideration for the execution of the deed giving it the right to erect and maintain poles, etc., upon and across said lands and the right of ingress and egress across said lands for the purpose of repairing said poles, etc., but the court did not find how much the fair cash market value of said lands had been depreciated, if any, by reason of the placing of said poles on said lands, and the existence of said easement as a burden thereon.   Also, the defendant had contracted to purchase land which would give him rights as a riparian owner, in and to the waters of Elkhart river, but the special findings are to the effect that the plaintiff could not, at any time, convey to defendant any such right.   Also, there is no finding that this right of riparian ownership, such as defendant agreed to purchase, was of no value to this farm.   It therefore necessarily follows that the plaintiff herein, even under his own theory of the law, if we were to concede that such theory was applicable, which we do not, upon the

facts found was not entitled to a decree of specific performance of the contract in question, as against the defendant.

Other questions presented by counsel for appellant need not be considered. As the court erred in its conclusions of law upon the facts found, and as there is no dispute herein as to the essential controlling facts, this cause is reversed, with directions to the trial court to state as a conclusion of law, upon the facts found, that the plaintiff is not entitled to the relief by him demanded, and that the defendant is entitled to recover his costs, and to render judgment accordingly.

Judgment reversed.